# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| XIMENA NAVARRETE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.  22-2393 (ABJ) |
| | ) |
| WHOLE FOODS MARKET IP, INC. | ) |
| AND WHOLE FOODS MARKET | ) |
| GROUP, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Ximena Navarrete was a "Prime Now" shopper, who performed her duties at five Whole Foods Markets ("Whole Foods") located in Washington D.C., Maryland, and Virginia from September 20, 2020 to October 6, 2021.  *See* Proposed Am. Compl. [Dkt. # 13-1] ¶¶ 14, 23, 45, 48, 54, 59 ("Am. Compl.").  She alleges that during her employment, multiple individuals subjected her to a pattern of discrimination and harassment due to her "sex, perceived sex, personal appearance, sexual orientation, gender, gender identity, gender expression, race, [and] national origin."  Am. Compl. ¶ 14.

Plaintiff first brought suit against Whole Foods Market Group, Inc. on July 11, 2022 in the Superior Court of the District of Columbia, alleging claims of retaliation and discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et. seq*.  Compl. [Dkt. # 1-3] at 1, 3–4.  Defendant filed a notice of removal on August 12, 2022 and the case was removed to this Court.  Notice of Removal [Dkt. # 1].

On August 19, 2022, defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) for failure to effect proper service and Rule 12(b)(6) for failure to state a claim,

or in the alternative, a motion for summary judgment on the grounds that Whole Foods was neither plaintiff's employer nor joint employer. Def.'s Mot. to Dismiss and Mot. for Summ. J. [Dkt. # 3] at 5–10. In light of the relaxed procedural requirements afforded to *pro se* litigants, on February 2, 2023, the Court explained the service rules, gave plaintiff an additional 45 days to serve defendant properly, and denied defendant's motion to dismiss on that ground without prejudice. Mem. Op. and Order Denying Mot. to Dismiss [Dkt. # 11] at 7–8.[1] On March 17, 2023, plaintiff served a significantly expanded complaint on Whole Foods Market IP, Inc. Return of Serv. [Dkt. # 13]. The Court deemed the filing to be a motion for leave to file an amended complaint. Min. Order (Mar. 23, 2023).[2]

Whole Foods Market IP, Inc. and Whole Foods Market, Inc.[3] then filed an opposition to plaintiff's motion for leave to amend, or, in the alternative, a motion for summary judgment with respect to the counts brought against them as plaintiff's "employer." Defs.' Opp. to Am. Compl. and Mot. for Summ. J. [Dkt. # 14] ("Defs.' Opp. and Mot."); Mot. for Summ. J. [Dkt. # 16].

---

1      The Court also held the rest of defendant's motion to dismiss in abeyance pending the resolution of the service issue and denied defendant's motion for summary judgment as moot. Mem. Op. and Order at 1, 2 n.1.

2      Plaintiff also attempted to file a second amended complaint on March 27, 2023. Order (Apr. 21, 2023) [Dkt. # 17]. The Court denied plaintiff leave to file the second complaint given the pendency of the motion to file the first amended complaint. *See* Order (Apr. 25, 2023) [Dkt. # 18].

3      As part of the filing, defendants supplied the declaration of Jacquelyn McQuillan-Caba, Whole Foods Senior Team Leader of Team Member Services for the Mid-Atlantic Region. She averred that Whole Foods Market IP, Inc. "is an entity that owns Whole Foods Market intellectual property" and "does not employ any [employees] in Washington, D.C. . . . or the United States more generally." Decl. of Jacquelyn McQuillan-Caba, Ex. 1 to Defs.' Sur-Reply [Dkt. # 24-1] ("McQuillan-Caba Decl.") ¶¶ 3–4. Given that Whole Foods Market IP, Inc. is not the subject of plaintiff's allegations, it is not a proper defendant in this case. The Court will therefore dismiss Whole Foods Market IP, Inc. from this suit under Federal Rule of Civil Procedure 21 and refer to only Whole Foods Market, Inc. as the "defendant" or "Whole Foods" hereafter.

Pursuant to *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992), the Court advised plaintiff of her obligations under Federal Rules of Civil Procedure 56(c) and 56(e), and Local Civil Rules 7(h) and 7(b), and ordered her to respond to the motion for summary judgment on that issue. Order (Apr. 18, 2023) [Dkt. # 15]. Plaintiff filed a combined reply to defendant's opposition to her motion to amend and opposition to the motion for summary judgment. Pl.'s Rebuttal to Defs.' Opp. and Mot. [Dkt. # 20] ("Pl.'s Reply and Opp."). The motions are fully briefed. Defs.' Sur-Reply to Am. Compl. and Reply in Supp. of Summ. J. [Dkt. # 24] ("Defs.' Sur-Reply").

Plaintiff has alleged that she was subjected to discriminatory, disrespectful, and utterly inappropriate harassment by a number of Whole Foods employees when she was in the stores doing her job as a "shopper" for other people. No one should have to tolerate that kind of bullying in a Whole Foods or any other workplace or establishment. The Court assures the plaintiff that it takes her allegations seriously, and that for purposes of the motion for leave to amend, it is assuming the truth of her allegations. Also, for purposes of the motion for summary judgment, the Court is resolving all inferences in the plaintiff's favor.

But the question before the Court is not whether plaintiff was treated badly. The issue is whether plaintiff has based her claims on legal theories that would enable them to go forward, and that is where this case falters. Plaintiff has sued under a number of statutes that enable victims of discrimination to sue their employers, but she has not presented facts that would cast doubt on defendant's sworn declaration that she was not, in fact, a Whole Foods employee. Indeed, plaintiff has claimed to be an employee of Amazon in a separate suit she brought against Amazon, Prime Now LLC, and twenty John and Jane Does, based on essentially the same conduct that is alleged in this suit. *See* Proposed Am. Compl. Civ. A. No. 22-3294 [Dkt. # 19] ("Amazon Compl."). Plaintiff has also brought claims alleging battery or assault committed by individual Whole Food

employees, but as will be explained below in more detail, even if those events occurred as described, she does not have legal grounds to bring those claims against the store, as opposed to the perpetrators themselves.

For the reasons set forth below, then, the Court will **GRANT** defendant's motion for summary judgment and **DENY** plaintiff's motion for leave to amend. This decision has no bearing on Civil Case No. 22-2293, pending against Amazon.

## BACKGROUND

Plaintiff's amended complaint alleges that from September 2020 to October 2021, she was a "Prime Now – Whole Foods Shopper," Am. Compl. ¶ 14, a role that involves gathering products at Whole Foods to fulfill orders from Amazon.com Inc. ("Amazon"). Decl. of Lynne McDaniel, Ex. A to Defs.' Opp. and Mot. [Dkt. # 14-4] ("McDaniel Decl.") ¶¶ 4–5.[4] Plaintiff alleges that she worked as a "Shopper" at five different Whole Foods locations, and experienced numerous hostile and discriminatory acts at each one. Am. Compl. ¶¶ 14–17.

On September 20, 2020, plaintiff started working at the Whole Foods located in Tenleytown, Washington D.C., where she "began to experience discrimination and harassment on the first day." *See* Am. Compl. ¶¶ 23. Plaintiff alleges that although she informed human resources that she is transgender and preferred to be addressed as "Vanessa Navarrete," her manager required her to wear a badge identifying her as "Victor Navarrete." Am. Compl. ¶¶ 23–24. According to

---

[4]     Any facts set forth in this opinion as either alleged in the complaint or in the undisputed statement of facts. Plaintiff did not describe her role as a shopper in the amended complaint, but both parties submitted facts to the Court regarding the job's function for the summary judgment motion. *See* Defs.' Opp. and Mot. at 34 ("Shoppers shopped for products and prepared orders at certain Whole Foods stores to fulfill orders from Amazon's customers."); Decl. of Ximena Navarrete [Dkt. # 20-1] ("Navarrete Decl.") ¶ 3 ("My job entailed reviewing online grocery orders, filling orders, packaging items, [and] placing packaged items in pick-up area for delivery to customers.").

plaintiff, the badge exposed her "transgender status" to her co-workers, who began harassing her as a result.  Am. Compl. ¶ 25–26.  One employee, Kara Richardson, allegedly sang "the 1978 disco song 'Macho Man'" around plaintiff, and, over time, the harassment escalated to other employees telling plaintiff that she "is a man" and "smells like shit."  Am. Compl. ¶¶ 26–28.  Plaintiff states that she notified the store manager, Scott Hammond, about this conduct, but he "did not take any remedial measures."  Am. Compl. ¶ 30.

Plaintiff also alleges conduct by two employees at the Tenleytown location that went beyond the disparaging remarks.  Am. Compl. ¶¶ 33–35, 40–41.  One of the employees, Adrian Bell, allegedly solicited oral sex from plaintiff by "rubbing his crotch" in front of her and telling her to "suck" him.  Am. Compl. ¶ 33.  Bell also allegedly made threatening statements such as "somebody has to kill that mother fucker," and kicked plaintiff "on the back of her ankles."  Am. Compl. ¶¶ 34–35.  The other employee, Antonio, allegedly followed plaintiff while "rubb[ing] his penis on [p]laintiff's buttocks and hips" on multiple occasions.  Am. Compl. ¶ 40.  Plaintiff alleges that on November 14, 2020, "Antonio exposed [h]is penis to" her and grabbed her by the shoulders while threatening to sexually harass her.  Am. Compl. ¶ 41.

Plaintiff started work at another Whole Foods in Silver Spring, Maryland, "on or about November 22, 2020."  Am. Compl. ¶ 45.  She alleges that there, she was approached by an employee named Simon, who started giving her "bear hugs from behind" daily.  Am. Compl. ¶ 46.  Simon also began sending her sexually explicit photos and texts.  Am. Compl. ¶ 47.  Plaintiff alleges that she was also sexually harassed by an employee named Agnissan Jean Philippe-Adje, who would "rub his penis" on plaintiff's "buttocks or hips."  Am. Compl. ¶ 66.  On June 12, 2021, Philippe-Adje allegedly "exposed his penis" to plaintiff and then chased her in the parking lot.

Am. Compl. ¶ 67.  Plaintiff alleges that she reported the conduct of Simon and Philippe-Adje to the store manager and human resources, but that nothing was done.  Am. Compl. ¶¶ 47, 69

Plaintiff also worked at the Whole Foods located on P Street in Washington, D.C.  Am. Compl. ¶ 48.  At that location, plaintiff was allegedly harassed by a "fellow co-worker" named Malek, who would "frequently fondle [p]laintiff's breasts and buttocks."  Am. Compl. ¶ 48. Plaintiff alleges that on December 12, 2022, a customer witnessed this conduct and reported it to the store supervisor, Renika Smith Miller.  Am. Compl. ¶49.  Ms. Miller questioned plaintiff about the incident, but the investigation was allegedly closed without any further action.  Am. Compl. ¶¶ 49–50.  Plaintiff asserts that Ms. Miller also harassed plaintiff by using the terms "H.I.V." when addressing her in public.  Am. Compl. ¶¶ 52–53.

At another point, plaintiff worked in a Whole Foods located in Arlington, Virginia.  Am. Compl. ¶ 54.  There, store manager Jeremy De Lorenzo allegedly removed plaintiff's badge and yelled that "she was not a woman" and her "real name was Victor."  Am. Compl. ¶ 54.  Plaintiff alleges that Mr. De Lorenzo also subjected her to a "pop" English language test in front of other store employees by demanding that she read a message on his cell phone out loud, after which he declared her "not competent to perform her job duties because she did not know how to read." Am. Compl. ¶ 56.  After the "pop" English test, Mr. De Lorenzo allegedly took plaintiff's badge and assigned cell phone, and terminated her.  Am. Compl. ¶ 57.

Plaintiff also worked at the Whole Foods located in Riverdale, Maryland.  Am. Compl. ¶ 59.  At this location, plaintiff was allegedly harassed by a coworker named Mathew, who "frequently used sexist, transphobic, and homophobic profanities."  Am. Compl. ¶ 59.  Plaintiff allegedly called the police on May 1, 2021 after Mathew became verbally abusive because she refused to "perform oral sex on him."  Am. Compl. ¶ 60.

Plaintiff also claims that in July 2021, Kevin Wallace, a security officer employed by Whole Foods, appeared at her home "under the guise of helping [her] resolve problems of discrimination and harassment at the workplace." Am. Compl. ¶ 61. Mr. Wallace was allegedly wearing a law enforcement uniform and carrying a firearm. Am. Compl. ¶ 61. Plaintiff alleges that after he entered her residence, Mr. Wallace "forced himself upon [her], over-powered [her], and sexually penetrated [her]." Am. Compl. ¶ 61. Plaintiff filed a criminal complaint with the District of Columbia Police Department on or about August 17, 2022 regarding the incident. Am. Compl. ¶ 62.

Plaintiff also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in December 2020 alleging discrimination and harassment on account of her gender, sex, sexual orientation, gender identity, race, national origin, and age. Am. Compl. ¶ 72. On March 11, 2021, the EEOC launched a formal investigation. Am. Compl. ¶ 72. Plaintiff alleges that after the investigation began, she received three calls from human resources offering her settlements for $20,000, $50,000, and $200,000, which she rejected. Am. Compl. ¶¶ 72–74. Defendant allegedly terminated her on December 6, 2021. Am. Compl. ¶ 75.

Based on these events, plaintiff brings fifteen causes of action:

> Count I – violation of 42 U.S.C. § 1981 for discrimination based on race and national origin, Am. Compl. ¶¶ 76–81;

> Count II – violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*, for discrimination based on race and national origin, Am. Compl. ¶¶ 82–87;

> Count III – violation of the DCHRA for discrimination based on her "sex, perceived sex, personal appearance, sexual orientation, gender, gender identity, gender expression, gender dysphoria, transgender status . . . and disability," Am. Compl. ¶¶ 88–93;

> Count IV – violation of the DCHRA for aiding and abetting "unlawful employment practices," Am. Compl. ¶¶ 94–98;

Count V – violation of Title VII for discrimination based on "sex, perceived sex, personal appearance, sexual orientation, gender, gender identity, gender expression, gender dysphoria, [and] transgender status," Am. Comp. ¶¶ 99–105;

Count VI - violation of Title VII for aiding and abetting "unlawful employment practices," Am. Compl. ¶¶ 106–11;

Count VII – violation of the District of Columbia Bias Related Crime Act ("DCBRCA"), D.C. Code § 22-3704, based on the conduct Kevin Wallace, Am. Compl. ¶¶ 112–17;

Count VIII – common law battery for the conduct of Kevin Wallace, Am. Compl. ¶¶ 118–29;

Count IX – violation of the DCBRCA based on the conduct of Adrian Bell, Am. Compl. ¶¶ 130–36;

Count X – common law assault for the conduct of Adrian Bell, Am. Compl. ¶¶ 137–144;

Count XI – violation of the DCBRCA for the conduct of Agnissan Jean Phillipe-Adje, Am. Compl. ¶¶ 145–50

Count XII – common law assault for the conduct of Agnissan Jean Phillipe-Adje, Am. Compl. ¶¶ 151–58;

Count XIII – violation Title VII for hostile work environment, Am. Compl. ¶¶ 159–182;[5]

Count XIV – violation of Title VII for retaliation, Am. Compl. ¶¶ 183–97;

Count XV – violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, for failing to provide plaintiff reasonable accommodations for her gender dysphoria, Am. Compl. ¶¶ 198–212.

---

[5]    Plaintiff does not plead a statute or other source of law for her thirteenth claim, but she does reference her complaint with the EEOC. *See* Am. Compl. ¶ 173 ("The events contributing to the hostile work environment occurred within the 300-day period prior to Plaintiff's first EEOC charge."). Given that plaintiff's EEOC charge accused Whole Foods of violating Title VII, *see* Notice of Removal [Dkt. # 1-3] at 4, the Court assumes this claim is also made under Title VII.

## STANDARD OF REVIEW

### I.    Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

### II.    Motion for Leave to Amend a Pleading

When a party seeks to amend its pleading pursuant to Rule 15(a)(2), the Court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). When evaluating whether to grant a party's

motion for leave to amend its pleading after a responsive pleading has been served, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint. *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996), quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court may deny leave to amend based on futility "if the proposed claim would not survive a motion to dismiss." *Rumber v. District of Columbia*, 598 F. Supp. 2d 97, 102 (D.D.C. 2009), citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir.1996); *see also Ross v. DynCorp*, 362 F. Supp. 2d 344, 364 n.11 (D.D.C. 2005) ("While a court is instructed by the Federal Rules of Civil Procedure to grant leave to amend a complaint 'freely,' it need not do so where the only result would be to waste time and judicial resources. Such is the case where the Court determines, in advance, that the claim that a plaintiff plans to add to his or her complaint must fail, as a matter of law. . . .").

Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## ANALYSIS

The statutes underlying eight of plaintiff's proposed amended claims – Title VII, the DCHRA, and the ADA – authorize an employee to bring a cause of action for relief against her "employer." *See* 42 U.S.C. § 2000e-2 (authorizing plaintiffs to sue under Title VII for unlawful practices of an "employer"); D.C. Code § 2-1402.11(a)(1)(A) (prohibiting unlawful discriminatory practices "[b]y an employer" under the DCHRA); 42 U.S.C. §§ 12111(2), 12112 (authorizing

plaintiffs to sue "covered entities" under the ADA, which are defined as an "employer, employment agency, labor organization, or joint labor-management committee"). In the opposition to the motion for leave to amend, Whole Foods states, "[a]ssuming arguendo, the court accepts Plaintiff's Amended (or Second Amended Complaint) in part, the Court should grant summary judgment in favor of [Whole Foods] because Whole Foods is neither Plaintiff's employer nor joint employer, as a matter of undisputed fact." Defs.'s Opp. and Mot. at 34. Since the resolution of this issue requires the consideration of material outside of the proposed amended complaint, and plaintiff has had a full opportunity to oppose the motion for summary judgment under Rule 56, the Court will grant leave to file Counts Two, Three, Four, Five, Six, Thirteen, Fourteen, and Fifteen of the proposed amended complaint and take up the motion for summary judgment first before turning to the request to add the other proposed claims to the complaint.

## I. The Court will grant summary judgment in favor of defendant on Counts Two, Three, Four, Five, Six, Thirteen, Fourteen, and Fifteen because it is not plaintiff's employer.

In support of its position that Whole Foods does not employ plaintiff, defendant submitted the declaration of Lynne McDaniel, the Mid-Atlantic Region Executive Leader of Team Member Services for Whole Foods. *See* McDaniel Decl. McDaniel stated that Whole Foods never: (1) hired plaintiff; (2) disciplined or terminated plaintiff; (3) completed an I-9 Form for plaintiff; (4) paid plaintiff; (5) provided plaintiff with any medical, dental, or disability benefits; or (6) gave plaintiff work assignments. *Id.* ¶¶ 6–11. She further stated that, "Whole Foods has no record of a Team Member (i.e., an employee) by [p]laintiff's name within its Workday Human Resources system." *Id.* ¶ 12.

Plaintiff "denie[d] the truth" of each paragraph in the McDaniel's declaration. Pl.'s Reply and Opp. at 52–58. She submitted her own declaration, stating that defendant: (1) "gave [her]

work assignments"; (2) assigned her a "Team Member" account that defendant used to notify her of work assignments; (3) "created, maintained, utilized, and published job performance metrics" about her; (4) provided her with an "Employee Assistance Program [] Brochure"; (5) ensured payment of her salary while it investigated her complaints; and (6) repeatedly offered her money to resign and drop her lawsuit. Navarrete Decl. ¶¶ 6, 7, 9, 12, 16, 18, 20. Plaintiff included several screenshots to support her declaration, which show:

- Texts from an unidentified phone number reminding plaintiff of her upcoming shifts at Whole Foods, Ex. C to Pl.'s Reply and Opp. [Dkt. # 20-2] at 9–47;

- An application displaying upcoming available shifts at Whole Foods, *id.* at 50–51;

- Notifications that an "order" was assigned to plaintiff, Ex. D to Pl.'s Reply and Opp. [Dkt. # 20-2] at 54–56;

- An application displaying plaintiff's status as "Available for assignments" or "On break," Ex. E to Pl.'s Reply and Opp. [Dkt. # 20-2] at 58–65;

- A portion of a message from an unknown sender stating, "You all may not see it but I have a lot to answer for at both my stores. If the sites metrics are low or went down from the previous week and I didn't meet my goal, just like yourselves, I have to answer for it too. I appreciate those of you that are working really hard and staying focused on your personal metrics," Ex. F to Pl.'s Reply and Opp. [Dkt. # 20-2] at 67;

- What appears to be a scheduling application called "CS Schedule Manager" that shows the "Schedule for vctna," *Id.* at 69–70;

- An application displaying plaintiff's "Completed orders," *Id.* at 71–73;

- Notifications that plaintiff had "the ability to pick up Shopping shifts at" various Whole Foods locations, *Id.* at 74–80;

- An application showing plaintiff's "metrics," including her "Product Found Rate" and "Replacements Offered" percentage, *Id.* at 81–82;

- Notifications that individuals working in Whole Foods had COVID-19, *id.* at 84–87;

- An email from an unknown sender stating, "Thank you for taking my call earlier. I am very sorry to hear that you are feeling uncomfortable. I touched based with your manager who I have included on this email. He is going to connect with Whole Foods leadership to help review your situation. Attached in this email is the [Employee Assistance Program] brochure in case you would like to use any of the services," Ex. H to Pl.'s Reply and Opp. [Dkt. # 20-2] at 91.

- The "Team Member Assistance Plan," *id.* at 92;

- A "Manager chat" with "Cammie J" where plaintiff messages, "HR call me," Ex. I to Pl.'s Reply and Opp. [Dkt. # 20-2] at 94;

- A "Manager chat" with "Scott Hammond" where plaintiff messages, "I need to talk with you," "its very important," and "call me," *id.* at 95.

In response, defendant's sur-reply includes an additional declaration by the "Senior Team Leader, [Team Member Services] Business Partner for the Mid-Atlantic Region for Whole Foods," Jacquelyn McQuillan-Caban. McQuillan-Caban Decl. She states that plaintiff's screenshots "were not generated by any Whole Foods software, application, or other scheduling tool, nor did Whole Foods use text messaging to communicate schedules to Team Members." *Id.* ¶ 6. She further stated that the username and "shopperID" referenced in plaintiff's screenshots – "VICTNA" and "AIEF1A6XM841Z" – are not from the Whole Foods system. *Id.* ¶ 7. She adds that Whole Foods has no record of employees by the name of Scott Hammond or Cambria Lucas. *Id.* ¶ 5. Defendant supplemented the motion with three exhibits of its own: (1) a letter from Amazon to plaintiff congratulating her "on becoming an Amazon employee" as a "Prime Now – Whole Foods Shopper"; (2) a W-2 Wage and Tax Statement from "PRIME NOW LLC" issued to plaintiff; and (3) a letter from Amazon to plaintiff offering her the position of "Amazon Shopper" and setting her wage rate at $15.00 per hour. *See* Ex. 2 to Defs.' Sur-Reply [Dkt. # 24-2] ("Ex. 2"); Ex. 3 to Defs.'s Sur-Reply [Dkt. # 24-3] ("Ex. 3"); Ex. 4 to Defs.'s Sur-Reply [Dkt. # 24-4] ("Ex. 4").

13

The issue of whether plaintiff is an employee of Whole Foods, or an independent contractor, is governed by the test laid out in *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979). In *Spirides*, the D.C. Circuit determined whether the plaintiff was considered an "employee" for the purposes of Title VII. *Id.* The Court explained that while "[c]onsideration of all the circumstances surrounding the work relationship is essential," the "most important factor to review" is the "extent of the employer's right to control the 'means and manner' of the worker's performance." *Id.* The Court then identified eleven other factors to consider:

> (1) the kind of occupation . . . ; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment . . . ; (6) the manner in which the work relationship is terminated . . . ; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 832.

Although the declarations and exhibits submitted by the parties do not address all of the *Spirides* factors, there is no genuine dispute of material facts that would preclude a finding that plaintiff was not an employee of Whole Foods.

First, there is no genuine dispute about the fact that Whole Foods neither hired plaintiff nor set her wages; the two letters showing that Amazon both hired plaintiff as a "Prime Now" shopper and set her wage at $15.00 per hour leave no room for a reasonable fact finder to conclude otherwise. *See* Ex. 2; Ex. 4. The undisputed W-2 form, which reports plaintiff's annual earnings, also shows that "PRIME NOW LLC," not Whole Foods, paid plaintiff's wages. Ex. 3.

Second, it is also undisputed that Whole Foods did not discipline or fire plaintiff. The McDaniel Declaration clearly states that Whole Foods never did such a thing, McDaniel Decl. ¶ 7,

and plaintiff's only response was that she "was terminated from [her] job," without any reference to which entity was responsible. Navarrete Decl. ¶ 22.[6]

Third, it is undisputed that "Whole Foods has not provided [p]laintiff with medical, dental, or disability benefits, or with benefits like vacation or sick leave." McDaniel Decl. ¶ 10.

Finally, there is no genuine dispute that defendant did not control the means and manner of plaintiff's work. McDaniel averred that Whole Foods "has not given [her] work assignments" and does not supervise her "day-to-day activities." McDaniel Decl. ¶ 11. While plaintiff provided screenshots of her various work assignments, schedules, and metrics, in an effort to dispute this assertion, Pl.'s Reply and Opp. at 51, they do not create a genuine dispute of fact. The McQuillan-Caban Declaration states that plaintiff's screenshots "were not generated by any Whole Foods software, application, or other scheduling tool." McQuillan-Caban Decl. ¶ 6. It adds that plaintiff's username and "shopperID," as they appear in the screenshots, were also not generated by Whole Foods. *Id.* ¶ 7. And given that none of the screenshots contain any reference to Whole Foods or connect the company to directions provided, scheduling information, or use of metrics, a reasonable factfinder could not find plaintiff to be an employee based on this material above. Therefore, plaintiff has not shown that there is a genuine dispute over whether Whole Foods exercised control over the means and manner of her work, and the *Spirides* central factor also weighs in favor of defendant.

Since plaintiff has failed to designate specific facts that show there is a genuine issue for the jury to resolve on the question of whether plaintiff was a Whole Foods employee, summary

---

6    Plaintiff has alleged that she was unlawfully terminated by Amazon in her pending action against Amazon. Amazon Compl. ¶ 149.

judgment is granted in favor of defendant on all the claims that rely on plaintiff's status as an employee of Whole Foods:  Counts Two, Three, Four, Five, Six, Thirteen, Fourteen, and Fifteen.

The are seven remaining claims in plaintiff's amended complaint that do not depend on plaintiff's employment relationship with defendant, so the question is whether she will be granted leave to amend her complaint to add them.

## II.    The Court will deny plaintiff's motion to amend Counts One, Seven, Eight, Nine, Ten, Eleven, and Twelve because they are futile.

The remaining counts include one claim under 42 U.S.C. § 1981, three claims under the District of Columbia Bias Related Crimes Act, and three common law tort claims.    *See* Am. Compl. ¶¶ 76–81, 112–36, 137–58.

To assess a motion for leave to amend a complaint, the Court considers (1) undue delay; (2) prejudice to the opposing party;  (3) futility of the amendment;  (4) bad faith; and (5) whether the plaintiff has previously amended the complaint.  *Atchinson*, 73 F.3d at 425.  Defendant does not challenge plaintiff's amended complaint under the first, second, fourth, or fifth factors.  Thus, the issue to be resolved is whether adding the claims would be futile.  A claim is futile if it would not survive a motion to dismiss, *Rumber*, 598 F. Supp. 2d at 102, which means that the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

### A.  Count One of plaintiff's amended complaint under 42 U.S.C. § 1981 is futile because she has not pleaded a contractual relationship.

In her first cause of action, plaintiff claims that defendant violated 42 U.S.C. § 1981 by discriminating against her due to her race, Hispanic, and nation of origin, Mexico.  Am. Compl. ¶ 77.

Section 1981(a) protects the right to "make and enforce contracts" free from racial discrimination. 42 U.S.C. § 1981(a); *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017). Section 1981(b) clarifies that the term "make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). So, "[a]ny claim brought under [section] 1981 . . . must initially identify an impaired 'contractual relationship[]' . . . under which plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (internal citation omitted).

Plaintiff has not pled the existence of any contractual relationship that could form the basis for a section 1981 claim. Although she claims to be employed by Whole Foods, the Court has already found that Whole Foods was not her employer at all, and moreover, plaintiff never alleged the existence of an employment contract with either Whole Foods or Amazon. Thus, the section 1981 claim is futile, and the Court will deny leave to amend it.

### A. Counts Eight, Ten, and Twelve are futile because plaintiff has failed to plead facts sufficient to reasonably infer vicarious liability on defendant for the conduct of its employees.

Plaintiff's amended complaint seeks to add one common law battery and two common law assault claims against Whole Foods, based on the conduct of individuals alleged to be Whole Foods employees: Kevin Wallace, Adrian Bell, and Agnissan Jean Philippe-Adje. Am. Compl. ¶¶ 33–37, 61–67, 138.

Plaintiff has set out facts that satisfy the elements of battery in the claim against Wallace, the security guard who came to her home, and assault against both Bell and Philippe-Adje. Under D.C. common law, a battery occurs when defendant intentionally touches or uses force on another person in a harmful, offensive, or insulting way. *See Etheredge v. District of Columbia*, 635 A.2d

908, 916 (D.C. 1993); 1 Civil Jury Instructions for D.C. § 19.03.  Plaintiff alleges that Wallace entered her residence under the guise of helping with her the harassment concerns, but then overpowered and "sexually penetrated" her against her will, Am. Compl. ¶¶ 61, 118–29.

A common law assault occurs when defendant intentionally and unlawfully threatens or attempts to cause physical harm or offensive contact with plaintiff, causing "apprehension of an immediate and harmful or offensive conduct."  *See Madden v. D.C. Transit System, Inc.*, 307 A.2d 756, 757 (D.C. 1976); 1 Civil Jury Instructions for D.C. § 19.01.  Resolving all inferences in favor of the plaintiff, she has sufficiently alleged that she was assaulted when:  (1) Bell verbally threatened her, called her offensive names, and kicked her to "make [her] slip and fall," Am. Compl. ¶¶ 34–35, 138; and (2) Philippe-Adje "chased" her in the parking lot, stalked her, and "exposed his penis" to her.  Am. Comp. [7]  Am. Compl. ¶¶ 66–67, 152.

But plaintiff has not sued the alleged perpetrators.  Because she brought her battery and assault claims against Whole Foods, their survival depends on whether there are facts sufficient to show that Whole Foods is vicariously liable for the actions of any of the three men.

Under the doctrine of *respondeat superior*, an employer may be held liable for the acts of his employees committed within the scope of their employment.  *Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C. 1979).  To determine whether an employee acted within the scope

─────────────────────────

[7]    While plaintiff alleges a common law assault under D.C. law, Philippe-Adje's alleged conduct occurred at the Whole Foods in Silver Spring, Maryland.  Am. Compl. ¶¶ 66–68.  The Court notes that an assault at common law in Maryland has the same elements.  *See Continental Cas. Co. v. Mirabile*, 449 A.2d 1176, 1183 (1982) ("An assault is any unlawful attempt to cause a harmful or offensive contact with the person of another or to cause an apprehension of such a contact.").  And since the parties have not addressed this issue, and the claim is futile, the Court need not address whether the claim should be deemed to be brought under Maryland law or transferred.

of employment, courts analyze whether the action at issue: (1) "is of the kind [the person] is employed to perform"; (2) "occurs substantially within the authorized time and space limits"; (3) "is actuated, at least in part, by a purpose to serve the master"; and (4) "if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." *Trump v. Carroll*, 292 A.3d 220, 228 (D.C. 2023).

An employer can be liable "for the intentional torts of his employee," even if the employee is "prompted partially by personal motives." *Blair v. D.C.*, 190 A.3d 212, 226 (D.C. 2018). In these circumstances, though, the conduct must still be foreseeable to the employer. *Id.* Therefore, an employer is liable only for conduct that is "incidental" to "authorized conduct . . . undertaken *in service of* carrying out an employee's job function" or constitutes an "outgrowth of a job-related controversy." *Carroll,* 292 A.3d at 23–32 (emphasis in original).

In *Johnson v. Weinberg*, 434 A.2d 404 (D.C. 1981), the District of Columbia Court of Appeals faced the question of whether a laundromat could be liable for the conduct of its employee, who shot the plaintiff, a customer, during a dispute about missing shirts. *Id.* at 408–09. On appeal from an order granting a directed verdict in favor of the defendant, the Court held that there was "evidence from which a reasonable person could find that the shooting was the outgrowth of a job-related controversy." *Id.* at 409. The court pointed to the fact that the assault "arose out of [a] transaction" related to the employee's job, which involved cleaning the laundromat and removing clothing from machines that had finished their cycles. *Id.* It further noted that the assault was "triggered by a dispute over the conduct of the employer's business," which was laundering the missing shirts. *Id.* In these circumstances, the appellate court opined, a reasonable factfinder could find that the laundromat was liable for the assault. *Id.*; *see Hechinger Co. v. Johnson*, 761 A.2d

19

15, 18, 25 (D.C. 2000) (holding that there was sufficient evidence for a jury to find a hardware store liable for an employee's assault of a customer based on a dispute about payment for wood).

Here, plaintiff fails to plead facts that would give rise to a plausible inference that the store was vicariously liable for Wallace's conduct off work premises and after work hours. Although Wallace initiated contact with plaintiff by invoking a "job-related controversy," claiming he was at plaintiff's home to help "resolve her problems" at Whole Foods, Am. Compl. ¶ 61, there is no allegation that resolving ongoing human resources problems fell within the scope of the duties of a uniformed security guard, and there are no facts that he took any steps at plaintiff's home to advance that supposed objective. Indeed, plaintiff alleges that Wallace entered her home "under the guise" of helping her, Am. Compl. ¶ 61, so even according to the plaintiff, his actions were not an "outgrowth" of his employment. Also, unlike in *Weinberg*, the Court cannot infer that Wallace's conduct was related to Whole Foods business in a way that would be foreseeable to defendant. The facts alleged do not support an inference that the battery fell within Wallace's responsibilities as a security guard, had any purpose that would aid Whole Foods, or was a foreseeable use of force in the service of the store.

Plaintiff's claims of assault based on the conduct of Bell in Tenleytown and Philippe-Adje in Silver Spring similarly lack facts that would give rise to vicarious liability. First, there are no facts from which the Court can infer what type of work Bell or Philippe-Adje were employed to perform at Whole Foods, let alone infer whether the harassing and assaultive conduct could have been "incidental" to their job functions. Second, there are no facts to infer the existence of any job-related controversy; part of what makes plaintiff's allegations so troubling is that Bell and Philippe-Adje's conduct was unprovoked by anything job-related. So, although the harassment

occurred during shifts, there is nothing to support a finding that their actions advanced any objective of the defendant.

Plaintiff's common law claims fail to allege facts to support a plausible inference that Wallace, Bell, or Philippe-Adje were acting within the scope of their employment such that defendant would be vicariously liable. Therefore, her claims of battery and assault are futile and cannot be added to the complaint.

> **B. Counts Seven, Nine, and Eleven are futile because plaintiff cannot allege that Whole Foods committed "designated acts" under the DCBRCA.**

Plaintiff's amended complaint seeks to add three causes of actions under the D.C. Bias Related Crime Act, also based on the conduct of Kevin Wallace, Adrian Bell, and Agnissan Jean Phillipe-Adje. Am. Compl. ¶¶ 112–17, 130–36, 145–50.

The DCBRCA provides a private cause of action for "any person who incurs injury to his or her person . . . as a result of an intentional act that demonstrates an accused's prejudice based on the actual or perceived . . . sex, . . . gender identity[,] or expression . . . of a victim of the subject designated act." D.C. Code § 22-3704(a). The statutory scheme defines a "designated act" to mean a "criminal act," D.C. Code § 22-3701(2), and the District of Columbia Court of Appeals has further interpreted "designated act" to include "any criminal act recognized under D.C. law." *Aboye v. United States*, 121 A.3d 1245, 1250 (D.C. 2015).

Thus, to state a claim under the DCBRCA, the plaintiff must be a victim of a criminal act perpetrated by "an accused" against whom the action is brought. *See* D.C. Code § 22-3704(a) (providing a cause of action for the victim of a "an intentional act that demonstrates an accused's prejudice"). Although no appellate court has distinctly held that the "accused" means the defendant of the DCBRCA claim, two courts in this district have read it that way. *See Kurd v. Republic of Turk.*, 374 F. Supp. 3d 37, 56 (D.D.C. 2019) ("Under the hate crime statute, Plaintiffs

must be the victim of a 'designated act' perpetrated by Defendants."); *Chen v. ICS Protective Servs.*, No. 23-CV-01253, 2024 WL 4103700, at *4 (D.D.C. Sept. 5, 2024) ("The plaintiff must be the victim of a 'designated act' perpetrated by defendants."). In short, the DCBRCA provides for a civil action against the perpetrator of a crime, not a third party.

All three of plaintiff's claims are based on the alleged conduct of the Whole Foods employees, who subjected plaintiff to assault and sexual assault. *See* Am. Compl. ¶ 113 ("The . . . conduct of Kevin Wallace . . . constitute[s] 'bias related crimes' and/or 'designated acts'"); Am. Compl. ¶ 131 ("The . . . conduct of Adrian Bell . . . constitute[s] 'bias related crimes' and/or 'designated acts'"); Am. Compl. ¶ 146 ("The . . . conduct of Agnissan Jean Phillipe-Adje . . . constitute[s] 'bias related crimes' and/or 'designated acts'"). Although battery and assault are "designated acts," plaintiff's claims fail because she did not and cannot allege that Whole Foods committed the acts. For this reason, the DCBRCA claims are futile, and she will not be granted leave to amend the complaint with Seven, Nine, and Eleven.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to amend [Dkt. # 13-1] is **GRANTED** in part and **DENIED** in part. Plaintiff's motion is **DENIED** as to Counts I and VII–XII, and **GRANTED** as to Counts II–VI, and XIII–XV, and defendant's motion for summary judgment [Dkt. # 16] on Counts II–VI, and XIII–XV is **GRANTED**.

This is a final appealable order.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 30, 2025